**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chauncey Alexander, et al., | No. CV-22-00781-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Golden Margarita LLC, et al., | |
| Defendants. | |

This is a class and collective action under the Federal Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA"), and the Arizona Wage Act ("AWA") brought by Chauncey Alexander and Megan Krajewski (together, "Plaintiffs"), two former employees of a now-defunct restaurant and bar known as The Golden Margarita ("GM"). Defendants are the entities, Golden Margarita LLC and Ardor Concepts LLC, and individuals, Saraj Gem Ray ("Ray") and Jane Doe Ray, who owned and operated GM.

In an unusual twist, Golden Margarita LLC and Ray (together, the "Moving Defendants") have asserted various counterclaims against Plaintiffs premised on the notion that Plaintiffs themselves—in their capacities as the payroll coordinator (Alexander) and lead server (Krajewski) at GM—were responsible for causing GM to engage in the conduct that now gives rise to Plaintiffs' wage claims. In the Rule 26(f) report, the Moving Defendants explained their theory as follows:

> In or around August 2020, Alexander began working at GM as the Payroll Coordinator and was responsible for all of GM's payroll practices, which included calculating overtime, establishing cash wages, applying tip credits,

coordinating with payroll service providers, and ensuring all GM employees declared tips and were paid properly and on time. Alexander was the only GM employee who had access to GM's payroll records and who coordinated with GM's third-party payroll service providers. In or around January 2022, Krajewski began working at GM as Lead Server. Together with Alexander, Krajewski engaged in improper conduct, which included, without limit: (1) unilaterally changing payroll records; (2) comping/voiding meals without authorization and subsequently pocketing the case paid by patrons, purposely failing to account for tips paid to GM employees; (3) and handling all of GM's payroll practices without assistance from a third-party service provider. As a result of Alexander and Krajewski's improper conduct, GM suffered damages including, without limit, . . . damages arising from or relating to investigation of their wrongdoing (including this lawsuit) . . . .

(Doc. 15 at 7-8.)

Now pending before the Court is Plaintiffs' Rule 12(b)(1) motion to dismiss the Moving Defendants' counterclaims for lack of subject-matter jurisdiction. (Doc. 11.) For the following reasons, the motion is denied.[1]

## BACKGROUND

I.   <u>Plaintiffs' Complaint</u>

The factual allegations set forth below, which are presumed true for purposes of the pending motion, are derived from Plaintiffs' complaint. (Doc. 1.)

Krajewski worked as a server at GM from January 2022 through April 2022. (*Id.* ¶ 48.) Krajewski earned "an hourly rate below the full applicable Arizona minimum wage on account of her receipt of tips." (*Id.*) Krajewski seeks to represent the "Tipped Employees" class and collective.[2] (*Id.* ¶¶ 8, 10, 49.)

Alexander worked both as GM's "Bar Manager" and as GM's "Human Resources Administrator" from August 2020 through April 30, 2022. (*Id.* ¶ 45.) Alexander earned

---

[1]   The Moving Defendants' request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

[2]   The putative "Tipped Class Members" are those who "who work or worked as Tipped Employees at any time starting three years before this complaint." (Doc. 1 ¶ 10.) Similarly, the putative "Tipped Collective Members" are those who "work or worked as Tipped Employees at any time starting three years before this complaint was filed." (*Id.* ¶ 8.) These terms are used as Plaintiffs have used them in their complaint.

an "hourly rate slightly above the full applicable Arizona minimum wage."   (*Id.*) Alexander seeks to represent the "Non-Tipped Hourly Employees" class and collective.[3] (*Id.* ¶¶ 11, 46.)

The challenged payment practices in the complaint are as follows.  Regarding the Tipped Employees, Defendants paid them "a sub-minimum Wage, ostensibly according to the tip-credit provisions of the FLSA" (*id.* ¶ 89), but did not allow them "to retain all of the tips they earned" (*id.* ¶ 29).  "Defendants did not notify [Krajewski], or any of the Tipped Collective Members and the Tipped Class Members . . . before imposing a tip credit on their wages," which Plaintiffs allege is a prerequisite under the statutes, and thus "did not pay Plaintiff or the Collective Members the applicable federal or Arizona minimum wage." (*Id.* ¶¶ 25, 89, 91-92, 94-95.)  Further, "Defendants . . . subjected Plaintiffs and the Tipped Collective Members to Defendants' policy and practice of deducting 25 percent of all credit card tips they earned and redirecting them to Defendants."  (*Id.* ¶ 98.)  Defendants also used improper tip-crediting calculations when they calculated overtime "by multiplying the applicable tip credit rate of pay by one and one-half times, rather than multiplying the full applicable minimum wage by one and one-half and then subtracting the available tip credit," resulting in less than the "one-half times their regular rates of pay for all time worked in excess of 40 hours in a given workweek" and exceeding "the permissible $3.00 per hour" tip-credit.  (*Id.* ¶¶ 26, 205.)  "In addition, Defendants engaged in the regular policy and practice of requiring [Tipped Employees] to reimburse Defendants for cash shortages, walkouts, and/or inadvertent mistakes committed by tipped employees in charging for food or beverages."  (*Id.* ¶ 99, 102.)

For both groups of employees, Defendants generally had a "policy and practice of failing to pay timely, or at all, their regular paychecks," and even when Defendants did,

---

[3]      The putative "Non-Tipped Hourly Class Members" are those who "work or worked as Non-Tipped Hourly Employees at any time starting three years before this complaint was filed."  (Doc. 1 ¶ 11.)  Similarly, the putative "Non-Tipped Hourly Collective" members are those "work or worked for Defendants at an hourly rate at or above the full applicable Arizona minimum wage, at any time starting three years before this complaint was filed Members."  (*Id.* ¶ 9.)  These terms are used as Plaintiffs have used them in their complaint.

"such paychecks would often return as having nonsufficient funds, such that Defendants failed to pay Plaintiff[s] . . . timely, or at all." (*Id.* ¶¶ 103-04, 110-111.) "[O]n or about early 2022, Defendants initiated a policy and practice under which, if any employee quit his or her job without providing Defendants a two-week notice, Defendants withheld that employee's final paycheck for a minimum of 30 days." (*Id.* ¶ 106, 113.) Finally, when calculating overtime, Defendants used an 80-hour workweek, as opposed to the "FLSA-required 40-hour workweek standard," and thus "failed to pay overtime properly" by not compensating overtime "for all hours worked in excess of 40 hours in a given workweek." (*Id.* ¶¶ 107-09, 114-15.)

Based on these allegations, the complaint asserts the following 14 causes of action: (1) FLSA, failure to give tip credit notice; (2) AMWA, failure to give tip credit notice; (3) FLSA, improper tip retention; (4) AMWA, improper tip retention; (5) FLSA, improper paycheck deductions; (6) AMWA, improper paycheck deductions; (7) AMWA, excessive tip crediting; (8) FLSA, untimely and unpaid paychecks; (9) AMWA, untimely and unpaid paychecks; (10) FLSA, improperly calculating tip credit rates and using an 80-hour standard for overtime calculations; (11) FLSA, untimely and unpaid paychecks; (12) AMWA, untimely and unpaid paychecks; (13) AWA, untimely and unpaid paychecks; and (14) FLSA, using an 80-hour standard for overtime calculations. (*Id.* ¶¶ 140-234.)

II.   The Moving Defendants' Counterclaims

The Moving Defendants assert eight counterclaims against Plaintiffs Krajewski and Alexander. (Doc. 11 at 30-46.) The factual allegations giving rise to those counterclaims, which are presumed true for purposes of the pending motion, are as follows.

In August 2020, "Alexander began working at GM as the Payroll Coordinator." (*Id.* at 31 ¶ 12.) "Alexander's responsibilities included, without limit, processing timesheets, updating payroll records, and answering employee questions about payments." (*Id.* at 32 ¶ 13.) Further, Alexander was "solely responsible for calculating overtime, establishing cash wages, applying tip credits, coordinating with payroll service providers, and ensuring

all GM employees declared tips and were paid properly and on time." (*Id.* at 32 ¶ 14.) "In August 2020, Alexander began using Automatic Data Processing, Inc.'s ('ADP') payroll services" and was ADP's "sole point of contact." (*Id.* at 32 ¶¶ 18-19.) "Alexander was also the only GM employee with access to ADP's services, payroll documents, and payroll services." (*Id.* at 32 ¶ 20.)

"In or around November 2021, Ray instructed Alexander to end GM's services with ADP and engage with a new payroll service provider." (*Id.* at 32 ¶ 21.) "That same week, Alexander represented to Ray that payroll services were being activated with a new provider." (*Id.* at 32 ¶ 22.) "Solely relying on Alexander's representation, Ray approved payments to GM's employees," including when he "disbursed checks, paid overtime and cash wages, and applied credit tips as calculated by Alexander." (*Id.* at 32 ¶¶ 23-24.) But "Alexander never activated services with a new payroll service provider or disclosed she was handling payroll on her own without assistance from a payroll service provider." (*Id.* at 32 ¶ 25.) Aside from handling payroll on her own, "Alexander changed hourly rates on payroll records without authorization," "comped and voided meals without authorization and subsequently pocketed the cash paid by patrons," and "failed to ensure GM staff were declaring tips." (*Id.* at 33 ¶¶ 27-29.)

"In or around January 2022, Krajewski began working at GM as Lead Server." (*Id.* at 33 ¶ 30.) "In her position as Lead Server, Krajewski oversaw disbursement of tips to employees." (*Id.* at 33 ¶ 31.) "Over the course of her employment with GM, Krajewski supported and/or participated in Alexander's improper conduct by, among other things, comping and voiding meals without authorization and subsequently pocketing the cash paid by patrons." (*Id.* at 33 ¶ 32.) Krajewski also "failed to declare tips and encouraged other GM employees to do the same." (*Id.* at 33 ¶ 33.) "Upon information and belief, Krajewski knew Alexander was improperly managing payroll on her own and encouraged her to do the same for their own personal benefit." (*Id.* at 33 ¶ 34.) "On May 7, 2022, Ray was forced to close his business due, in part, to [Plaintiffs'] malfeasance." (*Id.* at 33 ¶ 35.)

Based on these allegations, the Moving Defendants assert the following eight counterclaims: (1) breach of fiduciary duty, (2) fraud, (3) fraudulent concealment, (4) constructive fraud, (5) civil conspiracy, (6) aiding and abetting, (7) unjust enrichment, and (8) common law indemnity.  (*Id.* at 33-42 ¶¶ 37-101.)

## DISCUSSION

I. <u>Legal Standard</u>

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact."  *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1048 (D. Ariz. 2018) (internal quotation marks and citations omitted).  "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary."  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  "The party asserting jurisdiction has the burden of proving all jurisdictional facts."  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

II. <u>Supplemental Jurisdiction</u>

28 U.S.C. § 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  "Section 1367 applies to both state-law claims brought by a plaintiff and to state-law counterclaims brought by a defendant."  *Nalan v. Access Fin.*, *Inc.*, 2020 WL 6270945, *2 (N.D. Cal. 2020).  Counterclaims are part of the same case or controversy when they "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (cleaned up).

1    "Rule 13 of the Federal Rules of Civil Procedure governs the pleading requirements

2    of counterclaims, and provides that a counterclaim may be either compulsory or

3    permissive." *Nalan*, 2020 WL 6270945 at *2.  A counterclaim is compulsory if it "arises

4    out of the transaction or occurrence that is the subject matter of the opposing party's claim"

5    and "does not require adding another party over whom the court cannot acquire

6    jurisdiction." Fed. R. Civ. P. 13(a)(1).  A permissive counterclaim is "any claim that is not

7    compulsory." Fed. R. Civ. P. 13(b).

8        In deciding whether a claim is compulsory, the phrase "transaction or occurrence"

9    is "read broadly." *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1252 (9th Cir. 1987).

10   The Ninth Circuit applies the "logical relationship test" to determine whether the claim is

11   compulsory.  *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992).  The logical relationship

12   test "analyze[s] whether the essential facts of the various claims are so logically connected

13   that considerations of judicial economy and fairness dictate that all the issues be resolved

14   in one lawsuit." *Pochiro*, 827 F.2d at 1249 (internal quotation marks omitted).  "A logical

15   relationship exists when the counterclaim arises from the same aggregate set of operative

16   facts as the initial claim, in that the same operative facts serve as the basis of both claims

17   or the aggregate core of facts upon which the claim rests activates additional legal rights

18   otherwise dormant in the defendant." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th

19   Cir. 2005) (internal quotation marks omitted).

20       It is well established that if the logical relationship test is satisfied and a

21   counterclaim is compulsory, the "common nucleus of operative fact" requirement is

22   satisfied and § 1367(a) confers jurisdiction. *Ader*, 324 F. Supp. 3d at 1051.  There is some

23   uncertainty, however, about whether § 1367(a) also extends jurisdiction over permissive

24   counterclaims under the right circumstances, given that the "case or controversy" language

25   of § 1367 "appears to be broad enough to encompass some permissive counterclaims."

26   *Campos v. W. Dental Servs.*, Inc., 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005).  *See also*

27   *Nalan*, 2020 WL 6270945 at *4 ("The Ninth Circuit has not definitively ruled on the

28   question of whether supplemental jurisdiction under § 1367 can cover permissive

counterclaims.  However, at least two circuits have held that a federal court may exercise supplemental jurisdiction over certain permissive counterclaims.").

Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a claim or counterclaim if it "raises a novel or complex issue of State law," "substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  "[A]ctually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.).  "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.'"  *Id.*  (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, (1966)).

III.    Analysis

Plaintiffs have asserted wage-related claims against the Moving Defendants under the FLSA, AMWA, and AWA based on theories of improper tip deductions, improper tip calculations, non-payment generally, and incorrect overtime calculations at GM.  The Court now must decide whether it can (and should) exercise supplemental jurisdiction over the Moving Defendants' counterclaims against Plaintiffs, which also relate to Plaintiffs' work at GM.  In Part III.A below, the Court addresses the first part of this inquiry—that is, whether the counterclaims satisfy the "logical relationship" test, such that jurisdiction is available under § 1367(a).  In Part III.B below, the Court addresses the second part of this inquiry—that is, whether the Court should nevertheless decline to exercise supplemental jurisdiction based on the factors set forth in § 1367(c).

…

…

A.    **Logical Relationship**

1.    The Parties' Arguments

Plaintiffs argue that the counterclaims are permissive under Rule 13 and do not satisfy the "common nucleus of operative fact" standard to confer jurisdiction under § 1367.  (Doc. 14 at 7-17.)  More specifically, Plaintiffs argue that the counterclaims "do not arise out of the same transaction or occurrence that is the subject matter of Plaintiff's FLSA claims" because "none of these claims require evidence of the hours worked or wages paid to Plaintiffs."  (*Id.*)  For example, Plaintiffs note that their claims are statutory and will focus on "whether [Plaintiffs] were employees, how many hours per week they worked for Defendants, their regular rates of pay, and whether Defendants properly compensated them for all hours worked in excess each workweek."  (*Id.* at 9.)  In contrast, Plaintiffs contend that the counterclaims "are based in tort, contract law, and criminal law." (*Id.*)  Plaintiffs thus contend that the counterclaims will require distinct evidence bearing on "whether Plaintiffs breached a fiduciary duty, if any; whether Plaintiffs acted fraudulently; whether Plaintiffs conspired and/or aided and abetted each [others'] efforts; whether Plaintiffs were unjustly enriched because of their alleged fraud; and whether Plaintiffs must indemnify Defendants for any alleged malfeasance."  (*Id.*)  According to Plaintiffs, such inquiries "raise entirely different issues of law and fact from Plaintiffs' claim[s], and entirely different evidence would be required to support or refute the counterclaim[s]."  (*Id.* at 10.)  Plaintiffs further argue that there is no nexus between the claims and counterclaims other than "the employment relationship between the two," which Arizona district courts (as well as courts in other districts) have routinely found to be insufficient to confer supplemental jurisdiction.  (*Id.* at 10-17.)

The Moving Defendants respond that, at a minimum, their indemnity counterclaim arises from the "same set of operative facts" as Plaintiffs' wage claims.  (Doc. 21 at 5.) The Moving Defendants contend that "common law indemnity provides GM with an equitable remedy to shift the burden of loss in the Complaint because Plaintiffs seek recovery for alleged violations of law arising from their own actions."  (*Id.*)  The Moving

Defendants further contend that all of their counterclaims are compulsory. (*Id.* at 6.) On this point, the Moving Defendants argue that because they "assert[] Plaintiffs were in fact responsible for any alleged liability under the FLSA, AMWA, and AWA because of their control over GM's payroll practices," it follows that the facts supporting those assertions, like "failing to maintain a payroll system as represented, unilaterally changing hourly rates, pocketing cash paid by patrons, [and] failing to report tips," would overlap with Plaintiffs' evidence that GM failed to "to pay wages, declar[e] tips, and properly calculate[e] overtime." (*Id.* at 7-8.) The Moving Defendants emphasize that the indemnity counterclaim, in particular, would require the Court review the "same set of operative facts as Plaintiffs' Complaint" and would "not require an entirely different body [of] evidence." (*Id.* at 8.) The Moving Defendants acknowledge that some additional discovery may be needed with respect to some of the counterclaims but contend it would be "minimal" and that "principles of fairness and judicial economy would be best served if the parties' claims are resolved in one lawsuit." (*Id.* at 8-9.) Elsewhere, the Moving Defendants assert that "there is near perfect overlap between the facts necessary to prove Plaintiffs' wage and hour claims and those necessary to prove GM's counterclaims." (*Id.* at 10-11.) "For example, both parties will attempt to prove the number of hours Plaintiffs worked (or did not work), and both parties will also attempt to introduce evidence establishing GM's payroll practices." (*Id.* at 11.) "While Plaintiffs will use this evidence to show any alleged violations of the FLSA, AMWA, and AWA, GM will use this evidence to show Plaintiffs were responsible for any liability alleged." (*Id.* at 11.)

   In reply, Plaintiffs maintain that the counterclaims "do not arise from a common nucleus of operative fact" and argue that the Moving Defendants' "conclusory statements fail to carry their burden to prove . . . this Court's jurisdiction." (Doc. 25 at 2.) Plaintiffs note that the Moving Defendants did not identify the elements of each of their causes of action to demonstrate that the evidence would overlap. (*Id.* at 3.) Instead, Plaintiffs accuse the Moving Defendants of "erroneously, and in a conclusory fashion, assum[ing] that their underlying claims are proven and that they can simply rely on time clock and payroll

evidence to support their damages." (*Id.*)  The time clock and payroll records will not, in Plaintiffs' view, have any bearing on the alleged wrongful conduct underlying the counterclaims because "none of Defendants' counterclaims require evidence of the hours worked or wages paid to Plaintiffs/Counter-defendants." (*Id.* at 4.)  Plaintiffs contend that the Moving Defendants "will need to rely on completely separate evidence if they wish to show that the illegal pay practices they engaged in were through no wrongdoing of their own." (*Id.*)

2.    Merits

Courts frequently conclude that they lack supplemental jurisdiction over counterclaims in FLSA actions, even when the counterclaims generally relate to the parties' employment relationship.  *See, e.g., Martinez v. PM&M Elec. Inc.*, 2019 WL 450870, *5 (D. Ariz. 2019) ("Plaintiff's FLSA and Arizona Wage claims assert Defendants failed to adequately compensate him. . . .  In contrast, Titan's counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and negligence will require proof of the parties' contract for the tools, withholding in reimbursement of the contract, and Plaintiff's alleged negligent refueling of a company vehicle and the resulting damages.  The two sets of claims overlap only insofar as each arises from the circumstance that Plaintiff was employed by Titan.  The simple fact of employment is insufficient to establish supplemental jurisdiction over Titan's counterclaims."); *Ripley v. PMD Dev. LLC*, 2018 WL 4931750, *2 (D. Ariz. 2018) ("[A]n employment relationship alone does not generate supplemental jurisdiction over state law counterclaims. . . .  The counterclaims overlap with Ripley's FLSA claim only insofar as each arises from the contract and employment relationship between Defendants and Ripley, which is insufficient to serve as the 'common nucleus of operative facts.'") (citations omitted).[4]    There is not, however, a categorical rule against finding supplemental

_____

[4]    *See also Poehler v. Fenwick*, 2015 WL 7299804, *2 (D. Ariz. 2015) ("The only connection between Defendants' contract [counter]claims and Plaintiff's FLSA claims is the existence of an employment relationship.  Indeed, other federal courts considering the issue have concluded that the mere existence of an employment relationship between plaintiffs and defendants were insufficient to establish supplemental jurisdiction over Defendants' counterclaims that have nothing to do with the underlying wage claims.");

jurisdiction over such counterclaims.    Instead, the jurisdictional analysis requires consideration of the specific factual allegations that underlie the counterclaims.  *Pegasus Gold Corp.*, 394 F.3d at 1196.

As explained below, the Court concludes that all of the Moving Defendants' counterclaims meet the "logical relationship" test, such that they form part of the same case or controversy under § 1367(a) as Plaintiffs' FLSA claims.

### a.    **Breach Of Fiduciary Duty**

In Arizona, the elements of a claim for breach of fiduciary duty are "the existence of a duty owed, a breach of that duty, and damages causally related to such breach." *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1004 (D. Ariz. 2011) (citing *Smethers v. Campion*, 108 P.3d 946, 949 (Ariz. Ct. App. 2005)).

Here, the breach of fiduciary duty counterclaim rests on allegations that Plaintiffs (1) made unilateral changes to payroll records, (2) improperly voided meals and took extra compensation, (3) generally failed to account for tips paid to employees, and (4) concealed their payroll practices from Defendants.  (Doc. 11 at 34 ¶¶ 37-42.)  These allegations arise from the same aggregate set of operative facts as Plaintiffs' FLSA claims.  Whether Plaintiffs were paid appropriately depends on the rate at which they were compensated, whether GM improperly deducted wages, and the amount of tips Plaintiffs earned.  *Cf. Dualan v. Jacob Transp. Servs., LLC*, 2015 WL 1915387, *2 (D. Nev. 2015) ("[D]iscovery between the FLSA claims and counterclaims will overlap: plaintiffs' FLSA claims will likely involve an inspection of plaintiffs' books and records, as will Jacob's counterclaims—in order to compare them to the amount of money Nemeth is alleged to have appropriated, through his misrepresentations, for his own benefit.").  For example, Plaintiffs allege that the comped/voided meals were "inadvertent mistakes" committed by tipped employees (Doc. 1 ¶ 99), while the Moving Defendants allege that these episodes

---

*Casas v. Brightwater Int'l, Inc.*, 2011 WL 486564, *3 (C.D. Cal. 2011) ("[D]efendant's counterclaims should be dismissed for lack of subject matter jurisdiction. . . .  The only tenuous connection between the two claims is the existence of an employment relationship between plaintiffs and defendants, which is insufficient to establish supplemental jurisdiction . . . .") (citation omitted).

were part of a calculated scheme by the employees (Doc. 11 at 34 ¶¶ 40-42).  Thus, the link between the claims does not stem merely from the employment relationship.  *Hayden v. Ariz. Pool & Fountain Guys, LLC*, 2016 WL 9456363, *2 (D. Ariz. 2016) ("In this case, however, there is more than simply an employment link that exists between Plaintiff's claims and Defendants' counterclaims.  Defendants allege that Plaintiff often failed to complete and submit his timesheets, falsified his timesheets, and misused time during his workday for personal tasks.").

*Vazquez v. Dan Keen Services Inc.*, 2021 WL 2043025 (D. Ariz. 2021), on which Plaintiffs rely, is distinguishable.  There, a single plaintiff brought a FLSA claim for unpaid overtime wages against his employer.  *Id.* at *1.  The employer counterclaimed for theft by conversion and fraud.  *Id.*  The court dismissed for lack of subject-matter jurisdiction because "Defendants' counterclaim would demand entirely different discovery involving Plaintiff's alleged use of Defendant's equipment for his side hustle and his other alleged fraudulent conduct, such as hour padding—not engaged in during the relevant period— while on the job." *Id.*  The court thus concluded that the "two sets of claims overlap only insofar as each arises from [P]laintiff's employment relationship with [Defendants.]." *Id.* (quoting *Ader*, 324 F. Supp. 3d at 1051).  Here, in contrast, Plaintiffs' alleged control over GM's payroll practices overlaps with the "same time period as Plaintiffs' claims."  (Doc. 21 at 8.)  The discovery tools used to explore the two sets of claims will largely be the same.  Finally, the core allegation underlying the fiduciary duty counterclaim (*i.e.*, Plaintiffs concocted the scheme of improper payment) is unlike the factually distinct event in *Vazquez* (*i.e.*, misuse of company property for a "side hustle" and unrelated time theft) and instead is closely related to Plaintiffs' wage claims.  *Morales v. RoxBox Containers, LLC*, 2021 WL 830499, *3 (D. Colo. 2021) ("Here, plaintiff's claim that he was not paid for overtime is closely related to defendants' counterclaim that plaintiff padded his hours.").  Therefore, the breach of fiduciary duty counterclaim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it.

b.    **Fraud**

"In order to maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury." *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (citing *Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966)).

Defendants' fraud counterclaim is premised on the allegation that Alexander falsely represented that she "was activating services with a new payroll service provider."  (Doc. 11 at 35 ¶ 45.)  Based on this representation, "Ray . . . continu[ed] to pay GM's employees in accordance with Alexander's payroll practices."  (*Id.* at 35 ¶ 51.)

Whether Alexander used a payroll services company to process payroll arises from the same aggregate set of operative facts as Plaintiffs' FLSA claims, which relate to how Plaintiffs were paid and the approval process for hours and rates of compensation. Presumably, Plaintiffs will present evidence as to how the wages were calculated (either by ADP or Alexander), and how Alexander, and thus GM, approved those allegedly incorrect calculations for processing.  Thus, the system used by GM to pay its employees directly relates to Plaintiffs' allegations that those calculations were incorrect.  It follows that the fraud counterclaim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it. *Solano v. Ali Baba Mediterranean Grill, Inc.*, 2015 WL 7770893, at *6 (N.D. Tex. 2015) ("The counterclaims alleged here are distinguishable from the fraud counterclaim rejected in *Gagnon* because the fraud here relates directly to the hours worked and the wages received for those hours. . . .  Since the fraud and theft of services claims relate directly to the number of overtime hours worked, the claim is compulsory, originating from a common nucleus of facts.").

### c.   **Fraudulent Concealment**

"Arizona recognizes the tort of fraudulent concealment: 'One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.'"  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 34 (Ariz. 2002) (quoting Restatement (Second) of Torts § 550 (1976)).

The fraudulent concealment counterclaim is based on the same factual allegations as the breach of fiduciary duty counterclaim.  (Doc. 11 at 36 ¶ 57.)  Whether Plaintiffs fraudulently concealed these practices from Defendants while they were employed by GM will rely on much of the same evidence as Plaintiffs' wage claims (*e.g.*, how wages were calculated, approved, or reduced).   Although the concealment of these practices is somewhat tangential to whether Plaintiffs were compensated appropriately for their work hours and will require additional evidence (like intent), the phrase "transaction or occurrence" for a compulsory counterclaim is read broadly.  *Pochiro*, 827 F.2d at 1252. Additionally, Plaintiffs allege that Defendants "acted with reckless disregard" of whether their actions violated federal law.   (Doc. 1 ¶¶ 145, 153, 160, 174.)   Defendants' counterclaim, which is premised on the allegation that it was Plaintiffs who "actively concealed" their actions and acted with "spite, ill will, and reckless indifference to the interests of others" (Doc. 11 at 36-37 ¶¶ 57-62), thus relies on and arises from the same aggregate set of operative facts as Plaintiffs' FLSA claims.  *Woods v. On Baldwin Pond, LLC*, 2013 WL 12158593, *4 (M.D. Fla. 2013) ("Defendants' counterclaim [for fraudulent concealment] in the instant case directly relates to Plaintiff's compensation.  In particular, Defendants allege that '[a] portion of Plaintiff's compensation from Defendants was a reduction in his monthly rent in the apartment that he lives in and is owned by Defendants.' Additionally, . . . Defendants here seek a money judgment 'representing the different [sic] between the fair value of Plaintiff's apartment and the amount of discounted rent Plaintiff

1   has paid, since January 1, 2013.'  Plaintiff's claim and Defendants' counterclaim may be
2   considered 'offshoots of the same basic controversy between the parties,' specifically,
3   whether and to what extent Plaintiff is entitled to collect wages under the FLSA.").
4   Therefore, the fraudulent concealment counterclaim satisfies the logical relationship test
5   and is a compulsory counterclaim, such that the Court may properly exercise supplemental
6   jurisdiction over it.

### d.   **Constructive Fraud**

8       Under Arizona law, "to prevail on a claim on constructive fraud, [plaintiffs] must
9   prove these elements: (1) Defendants had a fiduciary or confidential relationship with
10  Plaintiffs that gave rise to a legal or equitable duty; (2) Defendants breached that duty;
11  (3) the breach tends to deceive others, violates public or private confidences, or injures
12  public interests; and (4) the breach induced detrimental and justifiable reliance."  *Rowe v.*
13  *Bankers Life & Casualty Co.*, 2008 WL 5156077, *7 (D. Ariz. 2008) (citation omitted).
14  *See also In re McDonnell's Estate*, 179 P.2d 238, 241 (Ariz. 1947) (noting a claim for
15  constructive fraud must "aris[e] out of a fiduciary or confidential relationship").

16      As with the fiduciary duty and fraudulent concealment counterclaims, this
17  counterclaim is based on allegations that Plaintiffs (1) made unilateral changes to payroll
18  records, (2) improperly voided meals and took extra compensation, (3) generally failed to
19  account for tips paid to employees, and (4) concealed their payroll practices from
20  Defendants.  (Doc. 11 at 37-38 ¶¶ 66, 75.)  The Moving Defendants allege that Plaintiffs'
21  concealment meant that Defendants "continued to employ in key positions and
22  compensate" them.  (*Id.* at 37 ¶ 68.)  And the Moving Defendants contend they were
23  justified in relying on Plaintiffs' fraudulent actions and concealments as a result of the
24  fiduciary duties Plaintiffs owed them.  (*Id.* at 37-38 ¶¶ 64, 68, 70.)

25      Plaintiffs make much of the fact that "none of these [counterclaims] require
26  evidence of the hours worked or wages paid" and assert that the evidence would not
27  overlap.  (Doc. 14 at 7-8.)  This argument is unavailing.  As Plaintiffs acknowledge, the
28  evidence bearing on Plaintiffs' FLSA claims will consist of "whether they were employees,

how many hours per week they worked for Defendants, their regular rates of pay, and whether Defendants properly compensated them for all hours worked in excess each workweek." (*Id.* at 9.) But whether Plaintiffs were employees also bears on at least one of the elements for constructive fraud. *In re McDonnell's Estate*, 179 P.2d at 241. The constructive fraud counterclaim also requires evidence that, like the fraudulent concealment counterclaim, goes to Defendants' intent (or lack thereof). The Moving Defendants allege that Alexander "unilaterally changed payroll records" and "purposefully failed to account for tips paid to GM employees." (Doc. 11 at 37-38 ¶ 66.) These facts directly overlap with whether Defendants properly applied the tip credit and whether Defendants acted with the requisite mindset to incur liability for a "willful" violation of the FLSA. *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) ("A violation is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"). The bottom line is that the factual allegations underpinning the constructive fraud counterclaim arise from the same aggregate set of operative facts as Plaintiffs' FLSA claims, which turn in part on whether Defendants recklessly disregarded federal law in undercompensating their employees and whether Plaintiffs are entitled to the wages they seek. Therefore, the fraudulent concealment counterclaim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it.

### e.   **Civil Conspiracy And Aiding And Abetting**

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank*, 38 P.3d at 36-37. "In short, liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'" *Id.* (citations omitted). "Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must

substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Id.* at 23 (citations omitted).

The counterclaims for civil conspiracy and aiding and abetting (which are denominated as Counterclaims Five and Six) are based on the alleged cooperation between Alexander and Krajewski to accomplish the torts asserted in Counterclaims One, Two, Three, and Four.  (Doc. 11 at 39-40 ¶¶ 74-75, 79-80.)  The Court acknowledges Plaintiffs' point that these counterclaims may "drastically expand the scope of the issues raised beyond the questions of proper payment of minimum wage and overtime compensation." (Doc. 25 at 5.)  Nevertheless, the facts of this case vary dramatically from the typical scenario where an employer attempts to allege unrelated malfeasance on the part of the employee to distract from the wage and hour violations.

For example, in *Wilhelm v. TLC Lawn Care, Inc.*, 2008 WL 640733 (D. Kan. 2008), the district court dismissed an employer's counterclaim for civil conspiracy.  *Id.* at *3.  The court reasoned that "[n]o counterclaim is concerned with the number of hours which plaintiffs worked per week or whether they received proper compensation for their overtime.  In fact, many of the counterclaims involve post-employment conduct, which undermines the existence of a common nucleus of operative fact."  *Id.*  Here, in contrast, the Moving Defendants' counterclaims concern a discrete period of time (while Plaintiff Alexander was in charge of payroll), which falls within the broader time period encompassed by Plaintiffs' claims.  Further, the allegations underlying the civil conspiracy and aiding and abetting counterclaims are directly related to Plaintiffs' compensation.  The Moving Defendants allege that the payroll coordinator and lead server conspired together through their own actions (*e.g.*, not declaring tips, changing hourly pay, intentionally comping/voiding meals and pocketing the cash, and not using a payroll system) to cause GM to engage in the very conduct that now gives rise to Plaintiffs' claims.  As explained, the underlying tort counterclaims (*i.e.*, breach of fiduciary duty, fraud, fraudulent concealment, and constructive fraud) are compulsory and stem from the same aggregate set of operative facts as Plaintiffs' wage claims because they concern the *how* of

Defendants' billing practices and bear on whether the facts alleged in Plaintiffs' complaint, if true, occurred because of "reckless" actions on the part of Defendants or, instead, because of intentional conduct by Plaintiffs.  The same logic extends to the civil conspiracy and aiding and abetting counterclaims—the torts underlying each offense are those torts that relate directly to the wage claims and affect Plaintiffs' rights to recover.  Therefore, the civil conspiracy and aiding and abetting counterclaims satisfy the logical relationship test and are compulsory counterclaims, such that the Court may properly exercise supplemental jurisdiction over them.

### f.   **Unjust Enrichment**

Under Arizona law, "[a]n unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (citation and internal quotation marks omitted).

The Moving Defendants allege unjust enrichment as an alternative remedy should they not recover under any of their other theories.  (Doc. 11 at 40 ¶ 84.)  Based on the same alleged conduct by Plaintiffs underlying the other counterclaims—changing payroll records, comping/voiding meals, and failing to account for tips—the Moving Defendants allege they were impoverished through their "continued employment of and investment in the Former Employees, and damages arising from or relating to investigation of the Former Employees' wrongdoing (including this lawsuit), efforts to remedy and/or resolve same, loss of business and goodwill, lost profits, and attorneys' fees and costs."  (*Id.* at 40 ¶¶ 85-86.)

In *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257 (D. Kan. 2019), the court allowed an unjust enrichment counterclaim to proceed alongside the plaintiff's FLSA claim for unpaid wages.  *Id.* at 1264.  The court reasoned that "Plaintiff will need to present evidence showing her overtime hours worked and how much Defendant should have paid her (versus what she was actually paid)."  *Id.*  Similarly, the

court noted that to prove its unjust enrichment claim, the defendant "must present evidence that it paid Plaintiff holiday pay to which she was not entitled, and that Plaintiff knew she was not entitled to those wages but retained them anyways." *Id.* The court "therefore [found] that there is a logical relationship between the facts and evidence needed to prove Plaintiff's FLSA claim and Defendant's counterclaim for unjust enrichment." *Id.* The court also held that "allowing Defendant's unjust enrichment counterclaim to proceed would serve the interests of judicial economy" because "[a] simultaneous determination of the claims is necessary to calculate the appropriate measure of damages. Furthermore, the parties are the same, the claims require much of the same evidence, and many of the same witnesses are likely necessary for both claims." *Id.*

Similar considerations are present here. Plaintiffs' wage claims will require evidence of hours worked and the rates of pay. The Moving Defendants, in turn, seek to argue that Plaintiffs' actions resulted in overcompensation where meals were wrongly comped and tips went undeclared. (*See, e.g.*, Doc. 11 at 40 ¶ 85.) The evidence will largely overlap, given that Defendants' pay practices are squarely at issue. Therefore, the unjust enrichment claim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it.

g.     **Common Law Implied Indemnity**

"Contractual and implied indemnity, while arising under different circumstances, share the same basis: indemnity is an 'obligation resting on one party to make good a loss or damage another party has incurred.'" *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. Ct. App. 1986) (citation omitted). "In the absence of an express indemnity agreement, a party has a right to indemnity when there is an implied contract for indemnity or when justice demands there be the right." *Id.* "[I]ndemnity is an all or nothing proposition damage-wise, and hence should be an all or nothing proposition fault-wise." *Reishus v. Almaraz*, 2011 WL 42679, *4 (D. Ariz. 2011) (citation omitted). "It permits one defendant to shift the entire loss to one who more justly deserves it." *Id.* at *5.

The Moving Defendants allege that "[a]s between [them] and Alexander, the

obligation owed to GM's employees regarding payment of wages should be placed upon Alexander since she was responsible for GM's payroll practices and caused the issues asserted in her Complaint." (Doc. 11 at 41 ¶ 94.) They contend that Alexander "benefited from her improper conduct regarding GM's payroll practices" and "concealed" those practices from Defendants. (*Id.* at 41 ¶¶ 95-96.) "Any alleged liability asserted against [Defendants] was because Alexander held herself out as an agent, employee, and/or representative of GM." (*Id.* at 42 ¶ 98.) Further, the Moving Defendants allege that they themselves were "not active participants in the liability-creating event" and "did not handle or have exclusive control/access over their payroll practices." (*Id.* at 42 ¶ 99.)

This counterclaim seems to have the closest nexus to the facts underlying Plaintiffs' claims, as it requires a determination that Defendants should be held responsible for the alleged violations. Therefore, the common law implied indemnity claim satisfies the logical relationship test and is a compulsory counterclaim, such that the Court may properly exercise supplemental jurisdiction over it.

B. **Discretion**

1. The Parties' Arguments

Plaintiffs urge the Court to decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(4) because "[a]llowing the non-wage disputes to color Plaintiff's wage-related claims would undercut the underlying purposes of the causes of action." (Doc. 14 at 17, citation omitted.) Plaintiffs note that Arizona courts have previously held that "FLSA policy presents a compelling reason for the Court to refuse to exercise supplemental jurisdiction over Defendants' counterclaims" and that to "clutter [FLSA] proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act." (*Id.* at 17-18, citations omitted.)

The Moving Defendants respond that there are no compelling reasons to decline to exercise supplemental jurisdiction under any of the § 1367(c) factors and that allowing the counterclaims to proceed would "(1) conserve the parties' monetary resources; (2) promote judicial economy; (3) avoid litigation of duplicative claims, and (4) preclude the potential

of inconsistent outcomes." (Doc. 21 at 13.)

In reply, Plaintiffs urge the Court to decline to exercise supplemental jurisdiction under § 1367(c)(2) because the counterclaims will "substantially predominate over the wage claims of Plaintiffs and the Collective and Class members" considering that "Defendants' counterclaims drastically expand the scope of the issues raised beyond the questions of proper payment of minimum wage and overtime compensation." (Doc. 25 at 5.) Plaintiffs continue: "If Defendants' counterclaims are permitted to remain, this litigation will cease to be about Plaintiffs' and the Collective and Class Members' unpaid wages, and it will transform into Defendants' pursuit of grievances against two former employees (who just happen to be the two named Plaintiffs in this matter)." (*Id.*)

2.     Merits

As Plaintiffs correctly note, there are reasons to be cautious about allowing defendants to assert counterclaims in an FLSA action. As one Arizona court explained:

> Federal FLSA policy presents a compelling reason for the court to refuse to exercise supplemental jurisdiction over Defendants' counterclaims. As noted by the Fifth Circuit, '[t]he only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act.'

*Poehler*, 2015 WL 7299804 at *2 (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)). *See also Ripley*, 2018 WL 4931750 at *2 (same). However, these considerations don't require courts to categorically decline to exercise supplemental jurisdiction over such counterclaims under § 1367(c). Instead, the discretionary analysis turns on the specific facts and circumstances of each case.

For example, in *Hayden*, the plaintiff brought FLSA and AWA claims for unpaid wages and retaliation and the employer counterclaimed for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. 2016 WL 9456363 at *2. The employer's counterclaims arose from allegations that the plaintiff "misrepresented his prior work experience and falsified his timesheets." *Id.* In choosing to exercise supplemental jurisdiction over the counterclaims, the court reasoned that "there is more

than simply an employment link that exists between Plaintiff's claims and Defendants' counterclaims" and "judicial economy is best served by adjudicating all of these issues in a single action." *Id.* at \*2.

Here, too, the Court finds no compelling justification to decline to exercise jurisdiction under § 1367(c) over the Moving Defendants' counterclaims. Those counterclaims are inextricably intertwined with Plaintiffs' wage claims because they all hinge, in one way or another, on the premise that Plaintiffs were responsible for causing GM to engage in the challenged payment practices. The factual allegations underlying the counterclaims also directly conflict with Plaintiffs' contention that Defendants' alleged violations of the FLSA were willful. In essence, Plaintiffs and the Moving Defendants are telling two sides of the same story regarding Plaintiffs' compensation. Under these circumstances, judicial economy and convenience would best be served by allowing Plaintiffs' claims and the Moving Defendants' counterclaims to be tried together. *Gibbs*, 383 U.S. at 726.[5]

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to dismiss (Doc. 14) is **denied**.

Dated this 8th day of February, 2023.

Dominic W. Lanza
United States District Judge

---

[5] The Court notes that the narrow conclusion being reached here is that the counterclaims are not subject to dismissal based on the specific supplemental-jurisdiction arguments raised in Plaintiffs' motion. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (under "the principle of party presentation," courts "should not sally forth each day looking for wrongs to right" and instead should "normally decide only questions presented by the parties") (cleaned up). The Court expresses no view as to whether some or all of the counterclaims may be subject to dismissal for other reasons, such as preemption. *See, e.g.*, *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1407-08 (10th Cir. 1992); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999); *Perez v. TBG Logistics LLC*, 475 F. Supp. 3d 1001, 1004-06 (D. Ariz. 2016), *aff'd sub nom. Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097 (9th Cir. 2020).